## WOCHER ET AL. *v.* HOLLAND.

[No. 8,486.   Filed March 4, 1915.]

1. APPEAL.—*Review.*—*Findings.*—*Conclusiveness.*—On appeal the finding of the trial court is conclusive on the evidence if there is any evidence to support it.   p. 210.
2. PRINCIPAL AND AGENT.—*Authority of Agent.*—*Liability of Principal.*—Where defendant introduced plaintiff to one in his employ as being in charge of defendant's real estate and loan business,

and permitted plaintiff to negotiate a loan through such employe from one of defendant's clients, and to transact business with reference thereto under circumstances and conditions indicating full authority on the part of such employe, the liability of defendant for a balance of such loan which such employe induced the plaintiff not to draw, with the understanding that defendant would pay plaintiff a greater interest thereon than he was required to pay to the original lender, depends upon a determination of what plaintiff was justified in believing such employe's authority to be, and not upon the measure of authority actually given. p. 210.

3. PRINCIPAL AND AGENT.—*Action for Money Left with Agent.— Evidence.—Admissibility.*—In an action to recover money left with defendant's agent, being the unused portion of a loan negotiated by plaintiff through such agent, a statement of plaintiff's account issued by the agent showing the amount of the loan, the charges against same, and the balance due plaintiff, was competent evidence as part of the *res gestae*, and to show the condition of the account and the balance remaining. p. 211.

4. INTEREST.—*When Recoverable.—Account Stated.*—In an action to recover the unused portion of a loan negotiated by plaintiff through defendant's agent, and which such agent induced plaintiff to leave with defendant under an agreement to pay it to plaintiff on demand with interest, plaintiff was entitled to interest from the time of such agreement, either by virtue of the agreement, or by virtue of the statute (§7952 Burns 1914, §5200 R. S. 1881) upon the memorandum showing an account stated. p. 211.

5. PRINCIPAL AND AGENT.—*Authority of Agent.—Acts Beyond Authority.—Liability.*—Where an agent, who is permitted by his principal to act under conditions and circumstances indicating a greater authority than he really has, exceeds the actual authority given him, to the injury of one dealing with him in reliance on such apparent authority, the principal is bound thereby. p. 211.

From Superior Court of Marion County (81,123) ; *Pliny W. Bartholomew*, Judge.

Action by Carrie Holland against John Wocher and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Carl H. Weyl* and *Charles W. Jewett*, for appellants.

*John B. Elam, James W. Fesler* and *Harvey J. Elam*, for appellee.

IBACH, J.—This action was brought to recover money appellee alleges she loaned appellants as partners, December 12, 1906, and which they agreed to repay on demand, with interest. There was a trial by jury with a general verdict for appellee for $946.43, and answers to interrogatories. From a judgment on the verdict appellants appeal.

The vital question in this controversy is whether appellants are bound by the acts and statements of one Louis McMains who was in their employ at the time of the transactions occurring out of which this suit originated. Briefly, it appears that appellants were conducting a general real estate, loan and insurance business or agency in the city of Indianapolis, as partners under the firm name of John Wocher & Bro.; that they had in their employ Louis McMains who was in charge of the real estate department of their business, and who was also at times entrusted to make loans for the firm, which did not loan its own money, but acted as an agent to make loans for its clients and patrons. Appellee is a married woman and resident of Indianapolis, and in 1905 was erecting a dwelling house in that city, and was in need of money with which to carry on the work and complete the building. Appellee's husband, William Holland, was acting for her and transacting her business and in December, 1905, went to appellants' office for the purpose of negotiating a loan for appellee and there met appellant William F. Wocher, who conducted him to an inner room of the office and introduced him to Louis McMains as the representative of the real estate department of their firm, and appellee's husband then made application to or through McMains for a loan of $2,000, which McMains said he could arrange, and procure from a lady, who, he knew, had money to loan. About February 10, 1906, McMains notified appellee and her husband that he had secured the loan from a Mrs. Woods, and appellee and her husband went to Wocher Bros. office and executed a note and mortgage and other necessary papers to get the money. When

the papers were executed McMains informed appellee and her husband that in such cases, when a house was not completed, it was customary for the firm to hold the money, so they could pay the carpenters' and other bills themselves; that all that would be necessary for appellee was to give the workmen orders on John Wocher & Bro. for the amounts due them, and that appellee would have credit for $2,000 with the firm. Appellee and her husband assented to this plan, and understood the arrangement was for the further and better protection of Mrs. Wood, the mortgagee. Neither appellee nor her husband ever received the $2,000. But thereafter appellee's husband gave three or four orders at different times on John Wocher & Bro. and against this $2,000 fund, these orders aggregating $1,200. At the time he was introduced to McMains by appellant William F. Wocher, or when the loan was made, McMains told appellee's husband that he had bought an interest in the firm business of John Wocher & Bro., and was going to look after the real estate and loan part of the business. Appellee's house was completed in October, 1906, and in December of that year, appellee's husband went to the office of John Wocher & Bro., and there met McMains and informed him that he had come down to look over and settle up the transactions in connection with the loan. McMains got a book and showed Holland a statement of the account; that he had drawn out by way of orders $1,200, that in addition the company had charged $24 for insurance, $3.75 for an abstract of title and $40 for commission, leaving a balance of $732.25 due appellee. After this balance was ascertained, McMains inquired of Holland if he had any use for this money, and he replied that he had no particular use for it, and that he would keep it to pay on the mortgage when the first installment became due. McMains then tried to interest him in the purchase of lots in Beech Grove, an addition to Indianapolis, and finally said, "Why not let us have the money. You are only paying 5% and we will allow you 6%.

You give us three or four months' notice or some notice, and we will pay you." Appellee's husband accepted this offer, and did not require payment of the $732.25, but left it on that proposition. At that time McMains gave appellee's husband a written memorandum or statement of the transaction, which was as follows:

"General Agents { The Ocean Accident and Guarantee Corporation, Ltd., of London. The New York Plate Glass Ins. Co. John Wocher. William F. Wocher.

John Wocher & Bro.,
Insurance, Loans, Real Estate and Investments,
Aetna Building, 23 N. Pennsylvania St.
Both Phones 295.      Indianapolis, Ind., Dec. 17, 1906.
Mr. W. H. Holland c/o Carrie Holland Loan.

|  | | |
|---|---|---|
| Credit— | Loan— | $2,000.00 |
| Charges:— | | |
|  | Cash | $1,200.00 |
|  | Insurance | 24.00 |
|  | Abstract | 3.75 |
|  | Commission | 40.00 |
|  | | $1,267.75 |
|  | Bal. due you | 732.25 |
|  | | $2,000.00 |

John Wocher & Bro. by Louis McMains, Mgr. R. E. Dept."

Nothing further was done about the matter until some time in the spring, April, May or June of 1910, when appellee's husband went to the office of John Wocher & Bro., and inquired for McMains, and was informed McMains was no longer there. He then saw appellant John Wocher, and presented the statement above set out, and told Wocher he wanted to get the matter settled up, and wanted the money. Wocher characterized McMains as a rascal and said he knew nothing of the transaction. Later on Wocher called on Holland at his place of business and again examined the statement, and again asserted that he knew nothing about

the matter. Both of appellants claim they never gave Mc-Mains any authority to borrow money in the name of their firm, and that was no part of his employment or duties with their firm. Appellee made formal written demand on appellants for payment, June 22, 1910.

The principal errors argued arise on the motion for new trial, and are that the verdict is not sustained by sufficient evidence, and is contrary to law, and that the assessment of the amount of recovery is erroneous, being too large.

The rule is too familiar to require more than reference, that if there is any evidence to support the judgment of the trial court, this court is not justified in interfering with it. It will be noted, from the facts as they appear in the resume of the evidence previously given, that this is not a case where there is a dispute as to whether an agency existed at all. In this case appellants admit that McMains was their agent and representative. He was in charge of a department of their business, and was introduced by one of appellants and held out by them to appellee and her husband, not merely as their "agent", but as their "representative". In appellants' office and as appellants' representative he received appellee's application, and negotiated this loan and conducted all the business in connection therewith as set out, in the name of appellants' firm and retained the money, directing appellee and her husband to draw orders on John Wocher & Bro. against the funds, which they did, and which orders were duly honored and paid. In effect appellants kept the money realized on appellee's mortgage loan; and applied certain amounts thereof to payments of insurance, for an abstract, and their commission for securing the same, and gave appellee credit for the balance, with authority to draw checks or orders against it, so that they were owing appellee from the first. The agreement to pay the balance remaining, on demand, with interest, was only getting the use of the money for an extended time, for the consideration of interest.

McMains was in appellants' office, and from what was said and done, had apparent general authority to represent appellants and their firm. Appellee and her husband were induced to and did act on the apparent surroundings, and the representations made to them. There is no claim that they acted in bad faith, or that they did not rely on the authority apparently promised by McMains to represent appellants. ''The question in such cases seems to be, not 'what was the authority actually given?' but, 'what was the party in dealing with the agent justified in believing the authority to be?'" *Wagner* v. *McCool* (1913), 52 Ind. App. 124, 135, 100 N. E. 395. See, also, Story, Agency (9th ed.) §127; Mechem, Agency §§283, 284.

There was no error in admitting the written statement of account in evidence. It was competent as a part of the *res gestae* of the transaction, and also to show the condition of the account and the balance remaining. *Miller* v. *Farmers State Bank* (1912), 52 Ind. App. 5, 100 N. E. 119; *United States, etc., Ins. Co.* v. *Batt* (1912), 49 Ind. App. 277, 97 N. E. 195.

3.

The promise to pay six per cent interest was part of the agreement, so if the contract is valid at all, it is certainly enforcible in its entirety, and the interest should be computed from the date of the promise. And on the other hand, the written memorandum or statement shows an account stated, on which the statute would make interest. §7952 Burns 1914, §5200 R. S. 1881. It can not be claimed that the payment was to be on demand, and at the same time insisted that that part of the agreement to pay interest shall be disregarded.

4.

In a case in its essentials resembling very closely the case at bar, this court announced and applied the following rule, which is equally applicable here: ''It is apparent from the evidence that this was a case of 'misplaced confidence' both on the part of appellant and appellees. It is one of the numerous cases, where one of two innocent

5.

persons must suffer because of the betrayal of a trust reposed in a third, and where the person most at fault must bear the loss.'' *Wagner* v. *McCool, supra,* 134, and cases cited. This rule appears to us as the just and salutary one, considering the situation of the parties.

We find no error, and the judgment is affirmed.

NOTE.—Reported in 108 N. E. 25. As to general rules respecting the authority of agents, see 16 Am. St. 493. See, also, under (1) 3 Cyc. 357; (2) 31 Cyc. 1331; Agency 2 C. J. §206; (3) 16 Cyc. 1006; (4) 22 Cyc. 1548, 1542; (5) 31 Cyc. 1331; Agency 2 C. J. §211.