## CHICAGO AND ERIE RAILROAD COMPANY v. MITCHELL, ADMINISTRATOR.

[No. 22,831. Filed November 23, 1915. Rehearing denied February 4, 1916.]

1. MASTER AND SERVANT.—*Injuries to Servant.—Negligence.—Wilfulness.—Complaint.—Sufficiency.*—A complaint in an action against a railroad company for the negligent killing of an employe, alleging that decedent was killed while under a car in his employment as a car repairer through the negligence of a switching crew, who, knowing that decedent was under the car, ran the engine against the same without warning of any kind, was not bad as alleging a wilful injury. p. 385.

2. APPEAL.—*Presenting Questions for Review.—Refusal to Direct Verdict.*—The refusal of a trial court to direct a verdict can not be made the basis of an independent assignment of error, but must be presented for review through the medium of a motion for new trial. p. 386.

3. MASTER AND SERVANT.—*Car Repairer.—Warning Flag.—Evidence.—Admissibility.*—In an action for the wrongful death of a railroad car repairer while on duty, where the defense was that decedent failed to display a warning flag as required by the company's rule, evidence that early on Monday morning following the Saturday afternoon on which decedent was killed, a car repairer's

flag was displayed near the track eighteen or twenty rods from the scene of the accident, but between the cars under which decedent was killed and the switch connection with the main track, was admissible as having some tendency to prove that the flag was up at the time of the accident. p. 386.

4. MASTER AND SERVANT.—*Railroads.*—*Safe Place.*—A railroad company must use reasonable care to provide a safe place for its employes to do the particular work required of them and to keep it so, and the violation of such duty constitutes negligence. p. 390.

5. MASTER AND SERVANT.—*Car Repairer.*—*Switching in Railroad Yards.*—*Warning Signals.*—While at common law an employer was not liable to an employe injured by the sole negligence of a coemploye when both were engaged in a common employment, the rule has been abrogated by the Employer's Liability Act of 1911 (Acts 1911 p. 145, §8020a *et seq.* Burns 1914), so that where a switching crew backed cars pushed by a locomotive engine against a car on a switch track to move it, with either actual or constructive knowledge that a car repairer was at the time under the car at work and ignorant of their approach, their failure to give any warning of their approach was a violation of duty for which the employer was answerable. p. 390.

6. APPEAL.—*Review.*—*Refusal of Instructions.*—There was no error in the refusal to give an instruction where all that it involved was clearly stated in other instructions given. p. 390.

7. MASTER AND SERVANT.—*Injuries to Car Repairer.*—*Verdict.*—*Evidence.*—*Sufficiency.*—In an action against a railroad company for the wrongful death of a car repairer through the negligence of a switching crew in running some cars against a car under which he was at work, where circumstances were shown in evidence, which, if believed by the jury, seriously discredited the testimony of members of the crew to the effect that they had no knowledge of decedent's presence under the car, the verdict for plaintiff cannot be disturbed on the theory that there was no justification for finding that the crew had such knowledge. p. 391.

8. EVIDENCE.—*Civil Action.*—*Recovery.*—*Sufficiency.*—It is sufficient in all civil actions that the evidence supplies reasonable grounds for inferring facts essential to recovery. p. 391.

9. DEATH.—*Damages.*—*Excessive Damages.*—A verdict for $6,000 for the death of a car repairer who was forty-seven years old, had a family dependent on him, and was making from $55 to $60 a month, did not indicate that the jury acted from prejudice, passion, partiality or corruption, and hence was not excessive. p. 392.

From Superior Court of Allen County; *Carl Yaple*, Judge.

Action by Robert G. Mitchell, administrator of the estate of James C. Hill, deceased, against the

Chicago and Erie Railroad Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Affirmed.*

*W. O. Johnson, W. M. Johnson, C. K. Lucas* and *Walter Olds* for appellant.

*Fred H. Bowers,. Milo N. Feightner* and *John Aiken,* for appellee.

Cox, J. This appeal is from a judgment against appellant for negligently causing the death of appellee's decedent, James C. Hill, while in appellant's employ. The errors assigned and relied on for reversal are the action of the court (1) in overruling appellant's demurrer to appellee's complaint, (2) in overruling appellant's motion to direct a verdict for it by peremptory instruction, and (3) in overruling appellant's motion for a new trial. The only objection to the complaint raised in
1. appellant's propositions or points in support of the first alleged error is the claim that while the complaint is drawn to sustain a theory of negligence the facts averred show wilful acts on the part of appellant's employes alleged to have caused the death of Hill. Appellant's objection to the complaint is without merit. It alleged in substance material to this question that while Hill, a car repairer in appellant's employ, was under and between certain of appellant's cars on one of its sidetracks, in obedience to orders and the performance of his duty to repair the same, a switch engine of appellant's in the charge of its foreman or conductor and in the charge of its engineer and fireman was run upon the same track and approached the cars under which Hill was working; that the switch foreman and engineer knew that Hill was under the cars at

work but that unmindful of their duty towards him they carelessly and negligently ran the engine with great force against the cars under which he was working and carelessly and negligently failed and omitted to give him any warning of the approach of the engine or of any intention to move the cars under which Hill was working; that by reason of the engine striking the cars under which he was working they were moved along the track and he was run over and crushed to death by them.

Refusal of the trial court to direct a verdict by peremptory instruction can not be made the basis for an independent assignment of error in this court. Such action, to be available, must be presented to the trial court as cause for a new trial and the court's action in denying the new trial assigned for error. *Bane* v. *Keefer* (1899), 152 Ind. 544, 53 N. E. 834; *United States, etc., Ins. Co.* v. *Batt* (1912), 49 Ind. App. 277, 97 N. E., 195; *Deeter* v. *Burk* (1915), 59 Ind. App. 449, 107 N. E. 304.

It was assigned as cause for a new trial that the court erred in admitting the testimony of certain witnesses for appellee as to seeing a car repairer's warning flag sticking upright near the track on which decedent was killed subsequent to the time when the injuries which resulted in his death were received. Appellant's defence to the action was made on the theory that the switch crew had neither actual nor constructive knowledge that Hill was engaged in repairing the cars which they were about to move by running cars against them which were being pushed by a locomotive engine, and that his injuries, causing death in very few minutes, were due entirely to his own contributory negligence in failing, while doing the work on the cars, to display a warning flag as required by a rule

of the company. This rule was given in evidence and provided, "that a combined blue and red flag on metal standard by day and combined blue and red light by night, displayed at one end or at both ends of an engine, car or train, indicates that workmen are under or about it. Workmen are required to display such blue and red signals at either or both ends of an engine, car or train before proceeding with their work and the same workmen alone are authorized to remove them." Running to the north from appellant's main track in the immediate vicinity of Huntington appellant maintained a switch track to which subsidiary switch tracks were connected, running parallel with it past a mill for crushing stone. These tracks were used among other things for taking crushed stone from the mill. The track nearest the mill and just east of it was denominated track 1, the next 2, and the next 3, while the one farthest east and which was the main switch track was known as track 4. Bins for crushed stone from which it was loaded into cars extended over the tracks from the mill. The tracks were only accessible to a train from appellant's main road at the south end. Still east of these tracks there was the track of an interurban railroad. The cars on which Hill was doing repair work were on track 3 near the stone mill. He had then been repairing cars on these tracks for about a week before the day he was killed, on Saturday, July 22, 1911. There was evidence that during that time on several days the car repairer's warning flag had been displayed south of the stonemill in different places as the workman changed his place of work, one of these being between tracks 3 and 4. There was also evidence that the switch crew was on or about these tracks every day during that time and that on the day on which Hill was killed after three o'clock in the after-

noon, they had, earlier in the day, run in on track 4 and passed the cars on track 3. Members of the switch crew testified that when the cars were pushed in against the ones on which Hill was working they saw no car repairer's flag up at the end of the cars on which Hill was working and some testified that there was none. Two of them testified that after the accident a short time a car repairer's flag was found by one of them east of track 4 near the scene of the accident lying on a pile of timber. The testimony of which complaint is now made, given by two witnesses for plaintiff, was to the effect that early on Monday morning a car repairer's flag was displayed some eighteen to twenty-eight rods south of the scene of the accident between tracks 3 and 4 but between the cars under which Hill was killed and the switch connection with the main track. The objection made at the time of the introduction of this testimony was that it related to conditions at a time subsequent to the accident. The rule is well settled that when the existence of an object, condition, quality or tendency at a given time is in issue both the prior and the subsequent existence of it is, in human experience, some evidence of its existence at the time in question. The degree of probability of its continued existence depends on the nature of the specific thing involved and the circumstances of the particular case. The propriety of drawing the inference of the existence of the thing at a particular time from its existence prior or subsequent to that time depends on its being overcome by the likelihood of intervening circumstances. So that as far as the interval of time is concerned, no fixed rule can be laid down. A distinguished writer on evidence has declared that the question of admitting such evidence should be left to the sound discretion of the trial court. 1 Wigmore, Evidence §437.

That conditions before and after may be shown to show the conditions at the time of an accident has been decided in this State. *Pennsylvania Co.* v. *Witte* (1896), 15 Ind. App. 583, 593, 43 N. E. 319, 44 N. E. 377; *New York, etc., R. Co.* v. *Mushrush* (1894), 11 Ind. App. 192, 197, 37 N. E. 954, 38 N. E. 871; *Hopkins* v. *Boyd* (1897), 18 Ind. App. 63, 79, 47 N. E. 480. See, also, 29 Cyc 614; 8 Ency. Evidence 904; *Chicago, etc., R. Co.* v. *Krayenbuhl* (1902), 65 Neb. 889, 91 N. W. 880, 59 L. R. A. 920, 927; *Alcott* v. *Public Service Corp.* (1909), 78 N. J. L. 482, 74 Atl. 499, 138 Am. St. 619, 32 L. R. A. (N. S.) 1084, note 1117. The testimony complained of had a tendency to prove that the car repairer's warning flag was up at the time of the accident at the point where it was seen on Monday morning and we can no ; say that the trial court erred in admitting it. Having some probative force on that question the weight it should have was for the jury.

The giving of instructions Nos. 2, 3, 4, 5 and 11 was stated as causes for a new trial and is stated as propositions or points in appellant's brief asserting error wherein it is merely asserted that these instructions were inapplicable to the evidence and erroneous without pointing out any particular in which they are erroneous or inapplicable to the evidence. It is further claimed that the court erred in refusing to give instructions Nos. 8, 9, 10 and 24 tendered by appellant. Instructions Nos. 8, 9 and 10 were the same in substance and were to the effect that the law does not require a switching crew of a railroad company to ring the bell or sound the whistle of its engine when engaged in switching or setting cars in a railroad yard. The action of the court in refusing to give these instructions to the jury was correct. The law does impose upon a rail-

road company, as upon other employers, the duty of reasonable care to provide a safe place for its employes to do the particular work required of them and a continuing duty of reasonable care to keep it so. The violation of this duty is negligence. At common law under the common employment doctrine it was not deemed that the failure of a fellow servant to exercise reasonable care for the safety of a coworker was a breach of duty on the part of the master. He was not liable to an employe injured by the sole negligence of a coemploye when both were engaged in a common employment. 2 Labatt, Master and Servant §470 *et seq.* But this rule has been abrogated in cases like this before us and it must be obvious that for a switching crew to back cars pushed by a locomotive engine against a car on a switch track to move it, under which such crew actually or constructively knew a car repairer was at the time at work, in ignorance of their approach, without giving any warning of their approach would be a violation of duty for which the employer would be answerable under the law as it now is and under which this action was brought and prosecuted. Acts 1911 p. 145, §§8020a-8020k Burns 1914; *Vandalia R. Co.* v. *Stillwell* (1914), 181 Ind. 267, 104 N. E. 289. Whether such a warning should be given by bell or whistle or both is ordinarily a question for the jury in its province to determine whether reasonable care has been exercised. Acts 1911 p. 145, §8020g Burns 1914. There was no error in the court's refusal to give instruction No. 24 which appellant asked the court to give for the reason that all it involves was clearly stated in substance in not only one but in several other instructions which were tendered by appellant and given by the court.

As cause for a new trial counsel for appellant urge with much earnestness that the jury returned a general verdict and answered interrogatories in favor of appellee in defiance of the evidence.

7. This insistence of counsel is based on the claim that the testimony of members of the switch crew that no flag was displayed and that they had no knowledge of Hill's presence about the car, was uncontradicted and, therefore, the jury was without justification in finding that the crew pushed the cars against those under which Hill was killed with knowledge of his presence. There were circumstances which if believed by the jury seriously discredit the testimony of that member of the crew who claimed to have found a car repairer's flag on a pile of timber after the accident. The denial of knowledge on the part of the crew of Hill's presence as a repairer about the cars seems to have been based largely on their claim that no flag was displayed. We are not prepared to say that there was no conflicting evidence. We can not say from the presence of the crew about these tracks on the days preceding and on the day in question at the time preceding the accident, from the fact a car repairer's flag had been displayed about the cars on these tracks on other days prior to the accident by Hill while working there, and from the presence of it where it was seen on Monday morning, that the jury was unwarranted in finding that the crew should have known of appellant's presence as a car repairer about the cars on track 3 and in a position of danger. It is sufficient in all civil cases that the evidence supplies reasonable grounds for inferring facts essential to a recovery. *Cincinnati,*

8. *etc., R. Co.* v. *McMullen* (1889), 117 Ind. 439, 448, 20 N. E. 287, 10 Am. St. 67; *Riehl* v. *Evansville Foundry Assn.* (1885), 104 Ind. 70, 3 N. E.

633; *Indianapolis, etc., R. Co.* v. *Collingwood* (1880), 71 Ind. 476. What was said in the case last cited applies with full force to the evidence in this case. "There is much conflict in the evidence, and the positive testimony of one witness at least is directly in favor of appellant's theory, but there are circumstances very strongly supporting the verdict of the jury. A case of this character may, of course, be made out entirely by circumstantial evidence, and with both positive and circumstantial evidence before them, the jury must determine upon its weight and force, and it is not for us, except upon very strong reasons, to disturb their verdict. It is only necessary in civil cases, that the circumstantial evidence should 'agree with and support the hypothesis which it is adduced to prove.'"

It is claimed finally as stated in the assignment as cause for a new trial that the sum awarded as damages, $6,000, is excessive. Hill was 9. forty-seven years old when killed, had a family dependent on him and was making from $55 to $60 a month. This does not indicate that the jury acted from prejudice, passion, partiality or corruption. Considering his expectancy of life and earning power it will be found safely within the rule permitting compensatory damages. Judgment affirmed.

Erwin, J., not participating.

NOTE.—Reported in 110 N. E. 215. As to what is excessive verdict in an action for death by wrongful act, see 18 Ann. Cas. 1209; Ann. Cas. 1915 C 449. See, also, under (1) 26 Cyc 1386; (2) 3 C. J. 1389; 2 Cyc 999; (3) 26 Cyc 1427; (4) 26 Cyc 1121; (5) 26 Cyc 1360; (7) 26 Cyc 1454; (8) 17 Cyc 820; (9) 13 Cyc 378.